IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CHRISTINA C. SEIDNER and JARED MACKRORY,** Individually, and as representatives of a Class of Participants and Beneficiaries of the Kimberly-Clark Corporation 401(k) & Profit Sharing Plan, <br><br>Plaintiffs, <br><br>v. <br><br>**KIMBERLY-CLARK CORPORATION and BENEFITS ADMINISTRATION COMMITTEE OF KIMBERLY-CLARK CORPORATION,** <br><br>Defendants. | § § § § § § § § § § § § § § § § § § Civil Action No. **3:21-CV-867-L** |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss the Class Action Complaint Pursuant to Federal Rule 12(b)(1) and Federal Rule 12(b)(6) ("Motion" or "Motion to Dismiss") (Doc. 25), filed May 20, 2022. For the reasons herein explained, the Motion to Dismiss is **denied**.

### I.  Factual and Procedural Background

On April 14, 2021, Plaintiffs Christina C. Seidner and Jared Mackrory, individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Kimberly Clark Corporation 401(k) and Profit Sharing Plan (the "Plan"), brought this action against Kimberly-Clark Corporation ("Kimberly-Clark"), its Board of Directors, its Benefits Administration Committee ("Committee"), and unidentified individual John Does 1-30[1], for alleged breaches of

---

[1] Board of Directors of Kimberly-Clark Corporation and John Does 1-30 are no longer defendants in this action, as Plaintiffs did not include them as parties when they filed their Amended Complaint (Doc. 22) on April 21, 2022. The court refers to Defendants remaining in this action collectively as "Defendants."

**Memorandum Opinion and Order – Page 1**

fiduciary duty in administering the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiffs are former employees of Kimberly-Clark who participated in the Plan. In their Amended Complaint (Doc. 22), filed April 21, 2022. Plaintiffs allege that Defendants violated ERISA by breaching their fiduciary duties of prudence and to adequately monitor other fiduciaries responsible for Plan recordkeeping. Plaintiffs allege that, as a result of Defendants' breaches of their fiduciary duties, they and the Plan participants suffered millions of dollars in monetary losses in the form of unreasonable and unnecessary recordkeeping fees.

Plaintiffs seek a declaration that Defendants breached their fiduciary duties under ERISA. In addition, Plaintiffs seek an order: (1) requiring Defendants to restore all losses resulting from the payment of unreasonable recordkeeping fees to the Plan; (2) requiring Defendants to disgorge all profits received from or in respect of the Plan; and (3) enjoining Defendants from any further violations of their fiduciary obligations under ERISA.[2] Plaintiff also request equitable relief, including the appointment of a receiver; and they seek to recover attorney's fees, prejudgment interest, and costs.

On May 20, 2022, Defendants moved to dismiss this action for lack of standing and failure to state claims upon which relief can be granted. Doc. 25. On July 6, 2022, Plaintiffs filed a response (Doc. 28) in opposition to the Motion to Dismiss, to which Defendants replied on August 5, 2022 (Doc. 29). Thereafter, both sides filed motions for leave to file supplemental authority on September 7, 2022; December 6, 2022; and March 17, 2023. Docs. 30, 34, 39. These motions were denied on March 17, 2023, because none of the cases cited in the parties' notices of

---

[2] As Ms. Seidner and Mr. Mackrory are former employees of Kimberly-Clark, the court questions whether they have standing to seek injunctive relief to enjoin Defendants from committing further future violations of their fiduciary obligations under ERISA; however, this issue was not raised by Defendants in their Motion to Dismiss or briefed by the parties, so the court expresses no opinion regarding the matter at this time.

supplemental authority is binding on the undersigned, and the court undertook its own research without considering the notices. Further, in continually seeking leave to file additional supplemental authority, the parties were unnecessarily delaying the resolution of the Motion to Dismiss.

**II.    Article III Standing**

Defendants contend that Plaintiffs lack Article III standing for the claims asserted in this action. The court disagrees.

**A.  Legal Standard for Constitutional Standing**

Constitutional standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan* 504 U.S. at 560-61; and *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). When a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element of standing. *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A defect in Article III or constitutional standing implicates the court's subject-matter jurisdiction and, therefore, is properly considered under Federal Rule of Civil Procedure 12(b)(1). *See Cadle Co. v. Neubauer*, 562 F.3d 369, 374 (5th Cir. 2009) (citation omitted); *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017) ("Dismissals for lack of Constitutional standing are granted pursuant to Rule 12(b)(1).") (citation omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional

attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). In addressing a Rule 12(b)(1) motion at the pleading stage,[3] the court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Miss. River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir. 2016) (citations and internal quotation marks omitted). The court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 495 (1975). As the parties' contentions regarding standing focus on the allegations in Plaintiffs' Amended Complaint, the court limits its analysis to Plaintiffs' pleadings in resolving Defendants' Rule 12(b)(1) Motion.

### B. Discussion

Defendants focus on the first requirement for standing, arguing that:

> Plaintiffs have not alleged that they would have paid lower total fees for recordkeeping services if a flat per-participant fee, rather than a revenue-sharing arrangement, were used to compensate the Plan's recordkeepers. Put differently, any fees not collected through revenue sharing would still need to be recouped through direct fees to the Plan's participants. *See* Am. Compl. ¶ 66. Plaintiffs do not allege that they would be better off under this arrangement, much less offer facts to explain why it would be so.
>
> More broadly, Plaintiffs have also failed to show how they suffered any injury stemming from the recordkeeping fees paid by the Plan given they failed to provide a benchmark from which the Court could determine that the fees were excessive for the services provided. *See supra* pp. 11-14. Relatedly, Plaintiffs offer the conclusory and unsupported assertion that "excessive Plan recordkeeping fees led to lower net returns than participants in comparable 401(k) Plans enjoyed." Am. Compl. ¶ 74. But Plaintiffs do not identify any other purportedly "comparable 401(k) Plans" in their Amended Complaint with the same investment lineup, let alone with superior "net returns." There is thus no basis from which the Court could

---

[3] At the summary judgment stage, the plaintiff can establish standing only by "'set[ting] forth by affidavit or other evidence specific facts, which[,] . . . taken [as] true,' . . . support each element" of the standing analysis. *Texas v. Rettig*, 987 F.3d 518, 527-28 (5th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561).

**Memorandum Opinion and Order – Page 4**

conclude that Plaintiffs suffered any injury.

> By failing to allege how a Plan participant would have paid less in fees or otherwise suffered harm from revenue sharing, or from the other conclusory allegations in the Amended Complaint, Plaintiffs fail to establish that a revenue-sharing model caused them to suffer an injury in fact tied to the alleged conduct of Defendants.

Defs.' Mot. 20-21 (citing *Ortiz v. American Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021)) (footnotes omitted).

Plaintiffs respond that Defendants argument mischaracterizes their pleadings and the nature of their fiduciary duty claims. Plaintiffs contends that, contrary to Defendants' assertion, their claims do not turn on the manner in which recordkeeping fees were paid—via revenue sharing or direct fees:

> "Defendants did not breach their fiduciary duty of prudence by merely allowing the Plan to pay some portion of recordkeeping fees through a revenue-sharing fee model. Indeed, regardless of the pricing structure that the plan fiduciary negotiates with record-keepers, of which Plaintiffs express no preference, the amount of compensation paid to recordkeepers must be reasonable (not the 'cheapest' or 'average')."

Pls.' Resp. 10 (quoting Pls.' Am. Compl. ¶ 68). Plaintiffs assert that their pleadings satisfy the injury-in-fact requirement for constitutional standing, as they allege that they suffered "actual injury to their own Plan accounts with regard to excessive recordkeeping fees." Pls.' Resp. 11 (quoting Pls.' Am. Compl. ¶ 107) ("Plaintiffs paid these excessive recordkeeping fees in the form of direct compensation to the Plan and suffered injuries to their Plan accounts as a result.").

Plaintiffs further assert that they "invested in mutual funds that paid fees via revenue sharing," and, consequently, they can show that they were harmed as a result. Plaintiffs, therefore, contend that they have satisfied all of the requirements for standing, as their pleadings allege: (1) "an injury-in-fact in the form of unreasonable and excessive recordkeeping fees"; (2) that "the injuries to Plaintiffs' retirement account are fairly traceable to [Defendants'] actions in setting up

these fees and expenses through Hewitt, Alight, and Fidelity," which provided recordkeeping services during the Class Period (April 15, 2015, through the date of judgment); and (3) "[t]he injury is also likely to be redressed by a favorable judgment in the form of equitable relief." Pls.' Resp. 11 (citations omitted). Finally, Plaintiffs contend that Defendants' "benchmark" argument is not a standing argument but, instead, one that disputes the adequacy of Plaintiffs' allegations regarding the damages they suffered. Plaintiffs, therefore, argue that this issue is not appropriate for resolution under Rule 12(b)(1).

Unlike their original pleadings, Plaintiffs' Amended Complaint includes allegations that the named Plaintiffs, Ms. Seidner and Mr. Mackrory, personally suffered financial harm during the Class Period in the form of lower retirement account balances as a result of the excessive recordkeeping fees paid by the Plan.[4] Plaintiffs' pleadings also make clear that their claims for breach of fiduciary duty are not premised on the particular manner in which recordkeeping fees were paid—indirectly through revenue sharing versus directly from Plan assets—but rather on the excessiveness of the fees paid as a result of the fiduciary process followed by Defendants in setting up, monitoring, and administering the Plan through Hewitt, Alight, and Fidelity.

Further, Defendants cite no legal authority to support their contention that, for purposes of standing, Plaintiffs must show how they suffered injuries stemming from the recordkeeping fees paid by the Plan by providing "a benchmark from which the Court could determine that the fees were excessive for the services provided." Defs.' Resp. 21; *see also* Defs.' Reply 10 (asserting the same argument). Thus, the court determines that Plaintiffs' allegations are sufficient to show that their alleged injuries are particularized in an individual way, as well as concrete in nature. *See*

---

[4] Plaintiffs also allege that other Class Members suffered similar injuries. Whether a civil action is a class action, however, "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc.*, 578 U.S. at 338 n.6. (citations omitted).

**Memorandum Opinion and Order – Page 6**

*Spokeo, Inc.*, 578 U.S. at 334-344 (discussing requirement that an injury be particularized and concrete). Although little or no discussion is devoted in the parties' briefs to the remaining requirements for constitutional standing, the court further determines that allegations in Plaintiffs' Amended Complaint are also sufficient to satisfy these requirements, as Plaintiffs allege that their injuries and damages are attributable to Defendants' conduct in managing the Plan, and the harm alleged by Plaintiffs is likely to be redressed in their favor if they prevail on their breach of fiduciary duty claims against Defendants. Defendants' Motion to Dismiss for lack of standing is, therefore, **denied**.

### III.     Motion to Dismiss for Failure to State a Claim 12(b)(6)

####     A.  Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a

**Memorandum Opinion and Order – Page 8**

complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B. Legal Standard for Plaintiffs' Fiduciary Duty Claims Under ERISA

Under ERISA, plan fiduciaries are required to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 739 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)). A fiduciary of an employee benefit plan must also "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[,] and[ ] for the exclusive purpose of[ ] providing benefits to participants and their beneficiaries[ ] and defraying reasonable expenses of administering the plan." § 1104(a)(1)(A)(i)-(ii).

"[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). "This continuing duty exists separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments at the outset." *Id.* The prudence standard normally focuses on the process or method by which a fiduciary arrived at an investment decision, not on the results of the decision, as the fiduciary's duty of care requires only prudence. *Pension Benefits Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (citing (*In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)). Failure to allege facts that refer directly to the fiduciary's knowledge, processes, or investigation, however, is not fatal to a breach of fiduciary duty claim at the pleading stage if the court can "reasonably infer" from the plaintiff's pleadings that the defendant fiduciary's "process was flawed." *Pension Benefits Guar. Corp.*, 712 F.3d at 718 (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). The reason for this is that ERISA plaintiffs generally lack the inside information and details regarding a fiduciary's internal decision-making process at the pleading stage before conducting discovery. *Pension Benefits Guar. Corp.*, 712 F.3d at 718 (citing *Braden*, 588 F.3d at 598).

ERISA imposes liability for breach of fiduciary duty as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Thus, to allege a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege, or set forth facts from which the court can reasonably infer, that: (1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached

their fiduciary duties under ERISA; and (4) participants of the Plan suffered losses as a result of such breach. *See id*; *see also Blackmon v. Zachary Holdings, Inc.*, No. 5:20-CV-988-DAE, 2021 WL 2190907, at *3 (W.D. Tex. Apr. 22, 2021) (citation omitted).

### C. Discussion

At this stage, Defendants do not contest that the Plan is governed by ERISA or that they are fiduciaries of the Plan. They instead challenge the sufficiency of the allegations in the Amended Complaint, arguing that Plaintiffs have failed to plead any facts that could support a reasonable inference that Defendants breached any fiduciary duty owed to them. As indicated, Plaintiffs' fiduciary duty claims are based on allegedly excessive recordkeeping fees. Plaintiffs allege, among other things, that Defendants breached their: (1) duty of prudence in administering the Plan with respect to Plan recordkeeping fees; and (2) duty to monitor individuals responsible for Plan recordkeeping fees.

#### 1. Duty of Prudence

The duty of prudence cases cited in the prior section involved the duty of prudence in the context of fiduciary investment decisions. The court, however, determines, and the parties acknowledge, that the focus here should similarly be on whether Plaintiffs have alleged sufficient facts from which the court can infer that an imprudent or flawed decision-making process was used by Defendants as the Plan's fiduciaries with respect to recordkeeping fees. In this regard, Defendants argue that: (1) Plaintiffs' focus on the cost of recordkeeping fees charged cannot support an inference of imprudence; and (2) Plaintiffs' allegations do not provide a "meaningful benchmark" to support a claim of imprudence. In addition, Defendants contend Plaintiffs' calculations of recordkeeping fees for the Plan and alleged comparators are flawed and unreliable.

Plaintiffs respond that the allegations in their Amended Complaint are sufficient for the court to infer that the allegedly excessive recordkeeping fees paid to Hewitt, Alight, and Fidelity were the result of Defendants' failure to independently examine and monitor such fees. For support Plaintiffs cite to paragraphs 7 through 8 and 99 through 102 of their Amended Complaint.

The court has reviewed the Amended Complaint and similarly determines that the facts alleged by Plaintiffs are sufficient at this stage to support an inference that the decision-making process used by Defendants, or the lack thereof, was flawed and resulted in the overpayment of unreasonably high fees far in excess of the fees paid by other similar plans for the same services. Whether Plaintiffs' calculations of recordkeeping fees for the Plan and alleged comparators are flawed and unreliable is not appropriate for consideration at the motion to dismiss stage, as the court must accept as true the allegations in the Amended Complaint.

For similar reasons, the court is not persuaded that application of the "meaningful benchmark" standard advocated by Defendants is appropriate. In *Meiners v. Wells Fargo & Company*, 898 F.3d 820 (8th Cir. 2018), which Defendants cite, the Eighth Circuit adopted a "meaningful benchmark" standard and reasoned as follows based on its prior opinion in *Braden*:

> To show that "a prudent fiduciary in like circumstances" would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark. For example, in *Braden*, the plaintiff alleged the market index and other shares of the same fund. *Id.* at 595-96. However, while recognizing that Braden stated a claim, we cautioned that "our ultimate conclusions rest on the totality of the specific allegations in this case" and that "we do not suggest that a claim is stated by a bare allegation that cheaper alternative investments exist in the marketplace." *Id.* at 596 n.7. Because of the benchmark allegations, we concluded the plaintiff was not "required to describe directly the ways in which appellees breached their fiduciary duties." *Id.* at 595. The critical inquiry, then, is whether the missing factual allegations are facts about the funds themselves, which ERISA plaintiffs can research, or facts about the fiduciary's internal processes, which ERISA plaintiffs generally lack.

*Meiners*, 898 F.3d at 822-23 (citing *Braden*, 588 F.3d at 595-96).  Applying this standard, the court in *Meiners* concluded that the plaintiff failed to allege sufficient facts to show that the investment fund options offered by the defendant were imprudent because he did not allege that "cheaper alternative investments with *some* similarities exist[ed] in the marketplace" as required to establish a meaningful benchmark.  *Meiners*, 898 F.3d at 823-24.  The Meiners Court, therefore, held that "[t]he district court correctly determined that Meiners's omission of any meaningful benchmark in his Complaint meant that he failed to allege any facts showing the Wells Fargo TDFs were an imprudent choice," and, as a result, he "failed to state a claim for relief under ERISA."  *Id.* at 825.

The Fifth Circuit has yet to adopt or express an opinion regarding application of the Eight Circuit's "meaningful benchmark" standard in ERISA fiduciary duty cases.  In addition to *Meiner*, Defendants cite two cases out of the Northern District of Texas.  Defendants cite *Ortiz v. American Airlines, Incorporated*, 4:16-CV-151-A, 2020 WL 4504385, at *14 (N.D. Tex. Aug. 5, 2020), for the proposition that "making a bare allegation does not mean anything without a meaningful benchmark."  *Ortiz*, however, was a summary judgment case.  Defendants note that *Ortiz* was appealed to the Fifth Circuit, but the issue on appeal was constitutional standing, not whether the plaintiff's allegations satisfied *Meiner*'s "meaningful benchmark" standard.  Defendants also cite *Perkins v. United Surgical Partners International Incorporated*, No. 3:21-CV-973-X, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022).  *Perkins*, however, acknowledged that the pleading standard in ERISA cases involving breach of the duty of prudence is "unclear" and noted that, while some courts have required plaintiffs to provide a "meaningful benchmark" for comparison purposes, courts disagree as to what constitutes an appropriate benchmark.  *Id*. at *6.  Defendants cite a handful of other unpublished district court cases from outside the Fifth Circuit, but none is binding on the court or particularly persuasive.

**Memorandum Opinion and Order – Page 13**

As noted by the court in *Blackmon v. Zachary Holdings, Incorporated*, "other courts considering similar issues have held that the determination of the appropriate benchmark for a fund is not properly resolved at the motion to dismiss stage." 2021 WL 2190907 at *5 (citing cases). Like the court in *Blackmon*, the undersigned concludes that a determination regarding the appropriate benchmark involves issues of fact that cannot be decided on a motion to dismiss. *See id.* (citations omitted). Further, even assuming that this were the proper stage, the court agrees with Plaintiffs that their allegations, combined with the comparisons included in their Amended Complaint, allow the court to reasonably infer imprudence by Defendants with respect to their decision-making process involving the Plan's payment of recordkeeping fees. *See id.* Accordingly, Plaintiffs have plausibly stated a claim for breach of the duty of prudence under ERISA, and the court **denies** Defendants' Motion on this ground.

### 2. Duty to Monitor

Defendants argue that Plaintiffs' failure-to-monitor claim should be dismissed because, "without a breach of the duty of prudence, there is no independent basis for a breach of the duty to monitor," and Plaintiffs' Amended Complaint does not include any specific facts concerning Defendants' monitoring process or shortcomings. The court's denial of Defendants' Motion as to Plaintiffs' duty of prudence claim moots their contention regarding the duty to monitor claim. Moreover, the totality of the allegations in the Amended Complaint are sufficient to satisfy *Twombly*'s and *Iqbal*'s plausibility standard with respect to this claim, particularly when viewed in conjunction with Plaintiffs' allegations in paragraph 143, wherein they describe the different ways Defendants failed to monitor recordkeeping fees. Accordingly, Defendants' Motion on this ground is **denied**.

## IV. Conclusion

As explained, the court determines that Plaintiffs have standing to sue for the ERISA violations alleged, and that Plaintiffs have alleged sufficient facts regarding their breach of fiduciary duty claims to survive dismissal at the pleading stage of this litigation. The court, therefore, **denies** Defendants' Motion to Dismiss the Class Action Complaint (Doc. 25).

**It is so ordered** this 30th day of March, 2023.

_____
Sam A. Lindsay
United States District Judge